## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| STEPHEN DENARI, ) | |
| ) | CASE NO.: 10-cv-2704 |
| ) | |
| Plaintiff, ) | Judge Robert M. Dow, Jr. |
| ) | |
| v. ) | |
| ) | |
| PHIL RIST, GARY DRENIK, ) | |
| and PROSPER BUSINESS DEVELOPMENT ) | |
| CORP., an Ohio Corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephen Denari brings this defamation action against Defendants Phil Rist, Gary Drenik, and Prosper Business Development Corp. (collectively "Defendants"). Before the Court are two motions to dismiss or in the alternative to compel arbitration: One filed by Defendants Rist and Drenik [7], and one by Defendant Prosper Business Development Corp. ("Prosper") [5]. For the reasons below, both motions are granted and Plaintiff's complaint is dismissed.

**I.     Background**[1]

This lawsuit concerns a report that Defendants sent to the members of a company called BigResearch, LLC ("BigResearch").[2] The report contained statements that allegedly defamed Plaintiff and placed him in a false light.

BigResearch has at least two members: Defendant Prosper is the managing member and a company called Penn LLC ("Penn") is another member. (¶ 5). Penn is partly owned by a

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, e.g., *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Unless otherwise specified, all citations in this section correspond to Plaintiff's complaint [1].

[2] Plaintiff is a citizen of Illinois. (¶ 1). Defendants are each citizens of Ohio. (¶¶ 2-4). This case was removed from the Circuit Court of Cook County on the basis of the Court's diversity jurisdiction [1].

1

company called TMG Resources, Inc. ("TMG"); Plaintiff is the sole shareholder of TMG. (¶ 1). Rist and Drenik are the only two board members of Prosper, the only two officers of Prosper, and own the company. (Rist and Drenik Mem. [8] at 2 and Ex. B thereto, BigResearch, LLC Operating Agreement ("Op. Agreement") at § 5.02).

The BigResearch Operating Agreement provided that BigResearch would be governed by a three-person board of members. (Op. Agreement at § 5.01). Rist and Drenik, representing Prosper, received two of the three seats on the board. (*Id.*). Penn had the authority to appoint the remaining board member. (*Id.*). In or about September 2008, Penn appointed Plaintiff to serve as its designee on BigResearch's board. (¶ 6). Major decisions affecting BigResearch would be made by unanimous approval of the board of members. (Op. Agreement at § 5.01). However, the day-to-day management of the company was vested in Prosper, as BigResearch's managing member. (*Id.* at § 5.02).

On or about March 16, 2009, Defendants forwarded to BigResearch's members a document titled "2008 Recap—CONFIDENTIAL," which was a sort of annual report for the 2008 calendar year. (¶ 7). Among those who received the Recap was Penn's principal member in Illinois. (¶ 10). In pertinent part, the Recap stated:

> Stephen J. Denari, a business associate of Jaffer Ali, has taken an active role in the Penn arbitration as an advisor to Penn. Mr. Denari is the sole shareholder in TMG Resources, Inc. TMG owns a 15% interest in Penn. Mr. Ali has designated Mr. Denari as Penn's representative to the Board of Members of the Company in his place. The Management Company opposes this designation, as do Mr. Drenik and Mr. Rist, the other two members of the Board. Due diligence related to Mr. Denari has revealed a history of litigation and conduct which would cause Mr. Denari's membership on the Board to be harmful to and not in the best interest of the Company.

The Recap went on to detail five examples of Plaintiff's past conduct in support of the statement quoted above, including an allegation that Plaintiff was a defendant in a RICO lawsuit arising out of a hedge fund ponzi scheme. (¶¶ 7-8). The report concluded that "[i]t is of grave concern to

the Company that Mr. Denari might actually become a Member of the Board of Members of the Company."

Plaintiff filed the instant lawsuit in the Circuit Court of Cook County on March 15, 2010. Defendants were served on April 2, 2010, and filed their notice of removal on April 30, 2010. The complaint alleges three causes of action against Defendants: Defamation *Per Se* (Count I), False Light (Count II), and Defamation *Per Quod* (Count III). On June 17, 2010, the Court granted counsel for Plaintiff leave to withdraw [16]. Plaintiff filed a *pro se* appearance on July 8, 2010 [19]. The motion filed by Defendants Rist and Drenik forwards three arguments in the alternative (1) to dismiss for lack of personal jurisdiction, (2) to compel arbitration, or (3) to dismiss for failure to state a claim. Prosper concedes personal jurisdiction but moves in the alternative to compel arbitration or to dismiss for failure to state a claim.

## II. Defendants Rist and Drenik's Motion to Dismiss For Lack of Personal Jurisdiction

### A. Legal Standard

An action against a party over whom the Court lacks personal jurisdiction must be dismissed. See Fed. R. Civ. P. 12(b)(2). At this early stage of the litigation, and without the benefit of an evidentiary hearing, Plaintiff has the burden of establishing only a *prima facie* case of personal jurisdiction. See *uBID, Inc. v. GoDaddy Group, Inc.*, 2010 WL 3768075, *1 (7th Cir. Sept. 29, 2010). When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits. See *Purdue Research Foundation v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004).

Under Illinois law, a court may exercise personal jurisdiction over a non-resident through

3

operation of its long-arm statute. See 735 ILCS § 5/2-209. That statute extends personal jurisdiction over claims that arise out of a number of enumerated actions and activities, including transacting any business or committing a tort in Illinois. See 735 ILCS § 5/2-209(a)(1-2). In addition, personal jurisdiction is proper against any person "doing business" within Illinois. 735 ILCS § 5/2-209(b). Finally, the long-arm statute's "catch-all" provision authorizes courts to exercise jurisdiction on any basis permitted by the Illinois or federal Constitutions. 735 ILCS § 5/2-209(c). The Seventh Circuit has opined that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2003).

The federal test for personal jurisdiction under the Due Process Clause of the Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1940) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This "purposeful availment" requirement of the minimum contacts standard ensures that a non-resident defendant will not be forced to litigate in a jurisdiction as a result of random contacts with the forum or the unilateral activity of the plaintiff. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

In addition, the Supreme Court has distinguished two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414-416

(1984); see also *Hyatt Int'l*, 302 F.3d at 713. General jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 416; *Hyatt Int'l*, 302 F.3d at 713. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l*, 302 F.3d at 713. On the other hand, specific jurisdiction is more limited and a plaintiff in such circumstances must show that the alleged controversy between the parties "arise[s] out of" or "relate[s] to" the defendant's forum contacts in addition to establishing that minimum contacts exist. *Id.*

Finally, even if a court finds that the minimum contacts standard and the specific jurisdiction requirement have been met, a court's due process inquiry does not end. The court must also consider whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). "Thus, courts in 'appropriate cases' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the interstate judicial system's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and 'the shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). These considerations are sometimes used to establish the reasonableness of jurisdiction in lieu of a strong showing of minimum contacts. *Burger King*, 471 U.S. at 477 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

    **B.    Analysis**

Here, Plaintiff does not allege that Rist and Drenik had "continuous and systematic

contacts" with Illinois sufficient to establish general jurisdiction over them, nor would the allegations of the complaint and other the information before the Court support such a contention. Therefore, if jurisdiction is to be found, it will be on the basis of specific jurisdiction, such that the harm to Plaintiff must have arisen out of Rist's and Drenik's contacts with Illinois. See *Hyatt Int'l*, 302 F.3d at 713 (explaining that where a defendant's contacts with the forum state are more limited, the plaintiff's only option is to establish specific jurisdiction). Plaintiff argues that this Court has personal jurisdiction over Rist and Drenik solely because they sent the 2008 Recap to the offices of Penn's principal member in Illinois. (See Cmplt. at ¶ 10, Pl. Resp. [23] at 3).

Defendants Rist and Drenik contend that they are protected from being sued in Illinois by the so-called "fiduciary shield doctrine." Under the Illinois fiduciary shield doctrine, Illinois courts lack personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1995) (citing *Rollins v. Ellwood*, 565 N.E. 2d 1302 (1990)). Rist and Drenik argue that their "only contacts with Illinois were in their capacity as Board Members of BigResearch and/or as agents of its management company, Prosper." (Rist and Drenik Mem. [8] at 7). According to Rist and Drenik, their fiduciary duties required them to disclose the negative information that they learned about Denari to the members of BigResearch, because that information "had the potential to (and actually has) negatively impacted the finances of the company." (*Id.*). "Consequentially, the opinion was expressed by Rist and Drenik *solely* as agents of Big Research's management company and as members of the Big Research Board of Members." (*Id.* at 3 (emphasis in original)).

The rationale for the fiduciary shield doctrine is that it would be "unfair and unreasonable

* * * to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Rollins*, 565 N.E. 2d at 1318. Application of the doctrine is discretionary or equitable, not absolute. See *Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.*, 2002 WL 31427021, *3 (N.D. Ill. Oct. 30, 2002). In evaluating whether it is equitable to apply the doctrine in the circumstances of a particular case, courts consider whether (i) the individual's personal interests motivated his actions and presence in the state and (ii) the individual's actions were discretionary. *Id.*; see also *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 847 (N.D. Ill. 2009).

To ascertain whether an individual's personal interests motivated his actions, courts look to a number of factors including the extent to which the individual seeking protection under the doctrine is a shareholder or has a direct financial stake in the corporation's health. See *Cont'l Casualty Co. v. Marsh*, 2002 WL 31870531, *7 (N.D. Ill. Dec. 23, 2002) (citing *Plastic Film Corp. of America, Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001)) ("[t]he determinative factor is the individual's status as a shareholder, not merely as an officer or director"); *Interlease Aviation Investors II (Aloha) LLC v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1037 (N.D. Ill. 2003) (applying fiduciary shield doctrine despite position as officers and directors because plaintiff failed to provide factual support for claim they possessed substantial ownership interests in company); *Margulis v. Med. Parts Int'l, Inc.*, 1999 WL 183648, at *5 (N.D. Ill. Mar. 25, 1999) (citing *Plymouth Tube Co. v. O'Donnell*, 1995 WL 387595 (N.D. Ill. June 28, 1995) ("the fiduciary shield defense is unavailable to high-ranking company officers and shareholders [because they] have a direct financial stake in the company's health and therefore can be subjected to personal jurisdiction for actions that result in both personal and

corporate benefit")). The personal interests allegedly motivating the individual's actions "need not be pecuniary—they may be dislike or malice towards the plaintiff." *Rice*, 38 F.3d at 912; *Jones*, 52 F. Supp. 2d at 883. However, a defendant who dislikes or acts maliciously towards a plaintiff will not necessarily lose the fiduciary shield. Instead, the dislike must "have created or exacerbated the harm to the [plaintiff]." *Rice*, 38 F.3d at 912.

As to the second factor, courts have found that the "shield generally does not apply when the individual's actions are discretionary." *Jones v. Sabis Educ. Sys., Inc.*, 52 F. Supp. 2d 868, 884 (N.D. Ill. 1999) (quoting *Brujis v. Shaw*, 876 F. Supp. 975, 978 (N.D. Ill. 1995) ("The shield generally should not apply where the 'employee has the power to decide what is to be done and chooses to commit the acts that subject him to [jurisdiction].'"). However, "just because an individual is a member of management or holds controlling positions in a corporation does not nullify the protection of the fiduciary shield." See *Int'l Fin. Servs. Corp. v. Didde Corp.*, 2002 WL 398513, *5 (N.D. Ill. Mar. 14, 2002) (citing *State Security Ins. Co. v. Hall*, 530 F. Supp. 94, 98 (N.D. Ill. 1981)). This is because Illinois recognizes that corporate officers, directors and shareholders are separate and distinct from the corporation. *Id*.

In deciding whether to apply the fiduciary shield doctrine, courts have focused on the key language of *Rollins* that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Brujis*, 876 F. Supp. at 979 (quoting *Rollins*, 565 N.E.2d at 1315); see also *Minemyer v. R-BOC Representatives, Inc.*, 2007 WL 2461666, at *4 (N.D. Ill. Aug. 24, 2007) (in applying the doctrine, courts "must also consider, based on equitable principles, whether the factual scenario in its entirety warrants application of the shield against personal jurisdiction."). This

8

understanding of the doctrine may reflect a reading of *Rollins* that "suggests a broader approach to the fiduciary shield doctrine than merely asking whether the defendant exercised discretion or whether he was acting in an individual or representative capacity." *Id.* "Decisions that turn on the representative nature of the defendant's actions emphasize the unfairness of subjecting someone to jurisdiction whose conduct in Illinois was not of his own choosing. Similarly, those that turn on the defendant's use of discretion emphasize that it would not be unfair to exercise jurisdiction over someone acting in a representative capacity when he was in a position to decide whether or not to perform acts in Illinois." *Id.*

The Court must resolve the applicability of the fiduciary shield doctrine on a limited record. On that record, the "court must construe all reasonable inferences in favor of the plaintiff." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 n. 14 (7th Cir. 2003). In addition, "in evaluating whether the *prima facie* standard has been satisfied, the district court is not acting as a factfinder; rather it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." *Id.*

Upon careful consideration of all the information before the Court and all of the pertinent considerations, the Court finds that the fiduciary shield doctrine does not insulate Rist and Drenik from being sued personally in Illinois on the basis of the allegedly defamatory Recap.

As to the first factor, the allegations and information before the Court are sufficient to suggest that Rist's and Drenik's personal interests motivated them to send the Recap into Illinois. As discussed above, the "determinative factor" for determining whether an individual's pecuniary interests may have motivated his actions "is the individual's status as a shareholder, not merely as an officer or director." *Plastic Film Corp. of America, Inc.*, 128 F. Supp. 2d at 1147. As owners of Prosper, Rist and Drenik each have a "direct financial stake" in the health of

both Prosper and BigResearch. See *C.S.B. Commodoties, Inc.*, 626 F. Supp. 2d at 848 (citing *Cont'l Casualty Co.*, 2002 WL 31870531, *7). Also relevant is the fact that Rist and Drenik hold high positions in both companies and are thus personally tied to the success of both ventures. See *Margulis*, 1999 WL 183648, at *5. For purposes of the instant motion, these facts are sufficient to raise an inference that the individual Defendants' actions—while putatively taken "on behalf of" the companies for which they work—also could have been motivated in whole or in part by a desire to further their own financial or professional interests. Furthermore, the complaint alleges that Rist and Drenik published the Recap "with actual malice." (Cmplt. at ¶ 18). In *Roy v. Austin Co.*, 1994 U.S. Dist. LEXIS 16254 at *6-7 (N.D. Ill. 1994), Judge Gottschall held that a similar allegation (there, the plaintiff alleged that defendant's actions were "without justification based on the legitimate business interests of [the employer], and were performed maliciously") was sufficient—at least for purposes of surviving a motion to dismiss for lack of personal jurisdiction—to establish that the defendants' actions were taken to serve his own personal interests and thus strip him of the protection of fiduciary shield doctrine.

The second factor—whether Defendants' actions were discretionary—also does not support application of the fiduciary shield doctrine. As discussed above, courts do not consider it unfair to exercise jurisdiction over an individual when the actions giving rise to personal jurisdiction are discretionary. *Brujis*, 876 F. Supp. at 978. On the surface, Rist's and Drenik's high-ranking positions in both BigResearch and Prosper presumably vested them with the discretion "to decide what is to be done and choose[] to commit the acts that subject [them] to long-arm jurisdiction." *Brujis*, 876 F. Supp. at 978. Specifically, as members of the governing board of BigResearch and as representatives of Prosper (BigResearch's managing member), it is reasonable to infer that Rist and Drenik had control over whether to discuss Plaintiff in the 2008

10

Recap, what facts and language to use in the discussion, and to whom it would be sent. See *Brujis*, 876 F.Supp. at 979-80 (declining to apply doctrine where defendants were both "senior corporate officers in a position to decide whether those [Illinois] contacts should be made at all"); *Shapo v. Engle*, 1999 WL 1045086, at *22 (N.D. Ill. Nov. 12, 1999) (refusing to apply fiduciary shield doctrine where defendants were high-ranking officers). There is nothing before the Court to suggest that anyone superior to Rist and Drenik (either at Prosper or at BigResearch) ordered them to send the allegedly defamatory Recap into Illinois.

Rist and Drenik contend that despite their high ranking positions in the companies, they were essentially compelled by their fiduciary duties as BigResearch board members and as officers of Prosper (its management company) to disclose to the other members of BigResearch whatever negative information they learned about Plaintiff that could affect the business—that their fiduciary duties stripped them of all discretion. Such an argument could be compelling; however the argument fails because Rist and Drenik have not specifically identified the source or content of the obligation that compelled them to publish the Recap.

BigResearch is not a corporation—it is a limited liability company organized pursuant to the Delaware Limited Liability Act. (Op. Agreement at § 1.01). Delaware law governs the construction of the Operating Agreement and determines the rights and liabilities of the parties. (*Id*. at §§ 1.01; 12.02). Because limited liability companies are "creatures not of the state but of contract," duties and obligations of the parties "must be found in the LLC Agreement or some other contract." *Fist Ventures, LLC v. Segal*, 2008 WL 1961156, *8 and n.34 (Del. Ch. May 7, 2008) (citing Myron T. Steele,[3] *Judicial Scrutiny of Fiduciary Duties in Delaware Limited Partnerships and Limited Liability Companies*, 32 DEL. J. CORP. l. 1, 4 (2007) ("I conclude that parties to contractual entities such as limited liability partnerships and limited liability companies

---

[3] Myron T. Steele is the Chief Justice of the Delaware Supreme Court.

should be free-given a full, clear disclosure paradigm to adopt or reject any fiduciary duty obligation by contract. Courts should recognize the parties' freedom of choice exercised by contract and should not superimpose an overlay of common law fiduciary duties * * *").

Accordingly, the Court turns to the Operating Agreement. There is no provision of the Operating Agreement that requires Rist and Drenik to disclose to the BigResearch members all information they learn that has the potential to negatively impact the finances of BigResearch. One provision, § 4.06, requires that members advise the board of members and the management company (Prosper) of any information "which does or could significantly affect, either adversely or favorably, the Company or cause a significant deviation from the Annual Budget." However, § 4.06 does not impose a corresponding duty on the board or the management company to disclose similar types of information to the members. Section 9.02 requires the Company to "furnish each member with all necessary tax reporting information as to his interest in the Company, with an annual balance sheet and profit and loss statement and with a cash flow statement showing any distributions made to the Members." But as Plaintiff points out, this requirement calls for the board to disclose very specific types of financial information—it does not *require* BigResearch to disclose to members any information it believes could negatively impact the Company. Additionally, § 1.01 provides that "the [Delaware Limited Liability Company Act] shall govern the rights and liabilities of the parties hereto except as otherwise expressly stated." Rist and Drenik have not identified any provision of the Act that would have imposed a duty to disclose the negative information they learned about Plaintiff, and the Court was unable to locate such a provision of the Act.

Because Rist and Drenik have not demonstrated that they lacked discretion in the decision to send the Recap into Illinois, this second factor does not favor application of the

fiduciary shield doctrine. Furthermore, as precedent instructs, the Court has not mechanically applied the factors discussed above, but has considered all the circumstances and finds that equity does not compel the application of the fiduciary shield doctrine to protect Rist or Drenik from the Court's exercise of personal jurisdiction over them under Illinois law. See *Rollins*, 565 N.E.2d at 1316.

Absent protection from the fiduciary shield doctrine, the Court has personal jurisdiction over Rist and Drenik, because they are alleged to have committed an intentional tort in Illinois. A tortious act is not committed in Illinois merely because defendants allegedly caused Plaintiff reputational and economic injury within the state; Plaintiff must show that the tort occurred in the state of Illinois in some fashion. See *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (tort of interference with prospective economic advantage by making false claims of copyright infringement was not complete until Janmark's customer canceled the order in Illinois, therefore the injury and tort occurred in Illinois); *Indianapolis Colts, Inc. v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 412 (7th Cir. 1994) (finding Maryland-based franchise subject to personal jurisdiction in Indiana because defendant entered Indiana through television broadcasts in allegedly infringing on plaintiff's intellectual property rights). Here, Plaintiff alleges that Defendants purposefully sent the allegedly defamatory Recap to the offices of Penn's principal member in Illinois. Furthermore, it is apparent that one purpose of discussing Plaintiff in the Recap was to effect his removal from the BigResearch board of members by Penn.

Defendants do not dispute that they intentionally directed the Recap to Penn's principal member at an Illinois address. Defendants also do not dispute that their purpose was at least in part to affect Illinois interests—namely the business relationship between Jaffer Ali (Penn's principal member and an Illinois citizen) and Plaintiff (also an Illinois citizen). This is enough

for specific jurisdiction. Defendants directed the allegedly improper statements to an Illinois resident in Illinois, thereby allegedly committing a tort and causing injury within Illinois. See *Morton Grove Pharmaceuticals, Inc. v. National Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039, 1042-43 (N.D. Ill. 2007) (mailing of allegedly defamatory newsletters to Illinois residents in Illinois sufficient to confer specific jurisdiction over defendant); *Global Relief v. New York Times Co.*, 2002 WL 31045394, *6 (N.D. Ill. Sept. 11, 2002) (mailing of allegedly defamatory article contained in newspaper to Illinois residents coupled with an intent to affect Illinois interests constituted the commission of a tort within Illinois for purposes of conferring specific jurisdiction); see generally *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) (circulation of magazines by the defendant in the forum state is sufficient to support an exercise of jurisdiction in a libel action based on the contents of the magazine); *Calder v. Jones*, 465 U.S. 783 (1984).

Because the Court has personal jurisdiction over all three Defendants, it may consider the motions to compel arbitration filed by each of them.

### III. Motions to Compel Arbitration

Each of the Defendants has moved to compel arbitration of the claims in Plaintiff's complaint based on the arbitration clause found at § 11.01 of the BigResearch Operating Agreement, which provides:

> Arbitration is Exclusive Remedy. If a disagreement arises concerning the management or conduct of the affairs of the Company, or any provision of this Agreement (or the performance of obligations hereunder, including without limitation an alleged breach of this Agreement, a disagreement regarding interpretation of any provision of this Agreement, or any alleged breach of contract or duty by any officer or Member of the Company), the disagreement, upon written request of any party to this Agreement, shall be submitted for binding arbitration in proceedings conducted in Columbus, Ohio. * * * It is the intention of the parties to this Agreement that the dispute resolution procedures set forth in this section shall constitute the exclusive remedy for disagreements

14

> among any of the parties relating to the management or conduct of the affairs of the Company and, it is agreed that no party to this Agreement shall bring any legal action against or on behalf of any other party hereto except for the purpose of enforcing the provisions of this section of the Agreement.

Plaintiff argues that his dispute with Defendants is not subject to arbitration because (1) Plaintiff was not a party to the Operating Agreement, and (2) "the action here in defamation * * * has nothing to do with the business of BigResearch." (Pl. Resp. at 2). The Court will address each of Plaintiff's arguments in turn.

### A. Whether Plaintiff can be Bound by the Agreement to Arbitrate

"Arbitration is contractual by nature—a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citations omitted). That said, "there are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Id.*; see also *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995); *Int'l Ins. Agency Services, LLC v. Revivos Reinsurance U.S.*, 2007 WL 951943, *3 (N.D. Ill. March 27, 2007) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) ("[A] party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause.")).

Defendants here focus on the second doctrine—agency. "Under traditional agency theory, * * * [b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3rd Cir. 1993) (citing *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1281-82 (6th Cir. 1990); *Letizia v. Prudential Bache Securities*, 802 F.2d 1185, 1187-88 (9th Cir. 1986)). Courts in this circuit too have

followed the reasoning of the *Pritzker* court and held agents and employees to arbitration clauses found in contracts signed by their principals. See *Belom v. National Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002) (citing *Pritzker*, 7 F.3d at 1121-22); *Championsworld, LLC v. U.S. Soccer Federation, Inc.*, 2008 WL 4861522, *3 (N.D. Ill. Nov. 7, 2008) (same). This rule is an outgrowth of the strong federal policy favoring arbitration. *Belom*, 284 F.3d at 799 (citing *Letizia*, 802 F.2d at 1188).

Defendants argue that because Plaintiff was acting as an agent of Penn in all of his interactions with Defendants, Plaintiff should be bound by the arbitration agreement found in the Operating Agreement, to which Penn was a party. (Rist and Drenik Mem. at 8). This argument is a non-starter, as Defendants have not specified in what capacity Plaintiff served as an "agent" of Penn. Plaintiff was CEO of Penn from a period in 2004 to a period in 2006. (Pl. Resp. at 2). However, the events giving rise to this lawsuit occurred long after—in 2009. Perhaps Defendants meant to argue that Plaintiff was Penn's agent because Plaintiff had been appointed as Penn's designee to the BigResearch board. It is not clear to the Court that under Delaware law, a member of the board of members of a limited liability company serves as an agent to the individual or entity that appointed him. Defendants have not pointed the Court to any authority that would support such a proposition.

However, there is one additional basis on which Plaintiff could be bound by the BigResearch Operating Agreement. The arbitration clause, at § 11.01, specifically applies to the "parties to this Agreement." The Operating Agreement indicates that it is made "by and among PROSPER BUSINESS DEVELOPMENT CO., PENN L.L.C., and such other persons who may become members of the Company." (Op. Agreement at 1). The Delaware Limited Liability Company Act, at § 18-101 provides that "[a] limited liability company is bound by its limited

16

liability company agreement whether or not the limited liability company executes the limited liability company agreement." Accordingly, because BigResearch owes its very existence to the Operating Agreement and because BigResearch is itself an additional "party" to the Agreement, BigResearch is bound by the Agreement's arbitration clause at § 11.01. And because BigResearch is a legal entity that can "only act through" those authorized to take actions on its behalf, it stands to reason that an agreement to arbitrate that binds BigResearch would also bind those individuals who serve on its governing board of members. *Pritzker*, 7 F.3d at 1122.

So the question is whether or not Plaintiff was a member of BigResearch's board of members. If the answer is "yes," he can be bound by the agreement to arbitrate found in BigResearch's Operating Agreement. Plaintiff's complaint provides the answer to this question, as Plaintiff repeatedly alleges in his complaint that he was a member of BigResearch's board. (See Cmplt. at ¶ 1 ("Prior to the publication of Defendants' defamatory statements, Mr. Denari was a member of the Board of Members of BigResearch, LLC."); ¶ 6 ("In or about September 2008, Penn's principal member appointed Mr. Denari to BigResearch's Board of Directors."); ¶ 11 (As a result of Defendants' publication of the defamatory 2008 recap, Mr. Denari was removed from BigResearch's Board of Directors.")). In an attempt to avoid the application of the agreement to arbitrate, Plaintiff now claims that his appointment was never recognized by BigResearch and he never, in fact, became a duly appointed member of its board. (Pl. Resp. at 2). For support of this position, Plaintiff cites the very document at issue in this suit—the allegedly defamatory "2008 Recap." In relevant part, the Recap (which of course was written by Defendants) states that the "Company has refused to recognize Mr. Denari as a Member of the [BigResearch] board." For purposes of this motion, the Court finds that Plaintiff was, as he alleges, a duly appointed member of BigResearch's board. The Court is bound to accept as true

all well-pleaded allegations set forth in the complaint. See, *e.g.*, *Killingsworth*, 507 F.3d at 618. Plaintiff essentially asks the Court to credit Defendants' own statements in the 2008 Recap over his own allegations. That the Court may not do.

### B. Arbitrability of the Instant Dispute

Having found that Plaintiff can be bound by the arbitration clause in the BigResearch Operating Agreement, the Court's last task is to decide whether the instant dispute falls within the purview of the arbitration clause. The Court concludes that it does.

The question of arbitrability is one of contract interpretation and a party cannot be required to arbitrate any dispute which he has not agreed to arbitrate. *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241 (1966); *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998) (whether a particular issues is subject to arbitration is a matter of contract interpretation). It is up to the courts to determine whether the claim on its face is covered by the contract.[4] *United Steel Workers of America v. American Manufacturing Co.*, 363 U.S. 564, 568 (1960). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (If there is a doubt about the scope of arbitrable issues, courts "should resolve that doubt 'in favor of arbitration.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)); *NAMA Holdings, LLC v. Related World Market Center*, *LLC*, 922 A.2d 417, 431 n.

---

[4] As an initial matter, neither Plaintiff nor Defendants address the threshold issue of whether the question of arbitrability should be determined by the arbitrator or by this Court. Normally, this threshold determination turns on whether the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, or the applicable state arbitration code controls the action. Here, while the Operating Agreement does contain a broad Delaware choice of law provision (Op. Agreement at 12.02), it does not specify whether the FAA or the Delaware arbitration statute applies. In this case, whether the FAA or the Delaware arbitration code applies, the end result would be the same. Under both the FAA and Delaware arbitration law, the question of arbitrability is to be decided by the court, not the arbitrator, unless the parties clearly and unmistakably provide otherwise, *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006), which they have not done here.

30 (Del. Ch. 2007) (doubts about arbitrability should be resolved in favor of arbitration when a "reasonable" interpretation of an arbitration agreement points in that direction). In determining whether a particular dispute falls within the scope of an arbitration clause, a presumption of arbitrability exists such that arbitration should be compelled "unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*, 475 U.S. at 650 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

In interpreting a contract, language is to be given its plain and ordinary meaning. *Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010); *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992). The arbitration clause in the Operating Agreement covers, among other things, all disagreements "concerning the management or conduct of the affairs of the Company." (Op. Agreement at § 11.01). It also limits legal actions between the parties to actions to enforce "the provisions of this section of the Agreement." (*Id.*). Thus, in belt-and-suspenders fashion, the Agreement broadly defines the scope of matters that must be arbitrated and circumscribes the scope of permissible court actions to a category of one: actions to enforce the arbitration provision itself.

Both the belt and suspenders come into play in this instance. The statements that Plaintiff challenges are found within the BigResearch annual report and all concern Plaintiff's fitness to serve as a member of BigResearch's governing board of members. Whether an individual is fit to serve as a member of an LLC's governing body presents a disagreement "concerning the management or conduct of the affairs" of BigResearch. In addition, an action for defamation lies outside the narrow scope of matters between the parties that they agreed could be brought in a legal action, as opposed to an arbitration proceeding. Accordingly, Plaintiff's claims all fall

within the scope of the arbitration clause and are subject to arbitration. And because this opinion resolves all of the issues raised in Plaintiff's complaint and determines that those issues must be submitted to arbitration, dismissal is the appropriate disposition. See *Hostmark Investors Ltd. v. Geac Enterprise Solutions, Inc.*, 2002 WL 1732360, at \*3 (N.D. Ill. 2002) (quoting *U.S. & Int'l Travel & Tours v. Tarom*, 98 F.Supp.2d 979, 981 (N.D. Ill. 2000) ("'[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.'") (collecting cases)).[5]

## IV. Conclusion

For the foregoing reasons, the motions to dismiss or in the alternative to compel arbitration filed by Defendants [7, 5] are granted. Plaintiff's complaint is dismissed pending arbitration.

Dated: January 31, 2011

Robert M. Dow, Jr.
United States District Judge

---

[5] In view of the dismissal of this case on the ground that Plaintiff's claims are subject to arbitration, the Court declines to address Plaintiff's request for leave to amend his complaint [see 23, at 1] or Defendants' arguments [see 24, at 1-2] that Plaintiff's request to amend should be denied. Those matters may be raised with the arbitrator in due course.